IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES H., | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
|     v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | NO. 23-4755 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                              August 30, 2024

        Dolores H. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying her claim for disabled widow's benefits under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff filed a brief supporting her request for review, the Commissioner responded to it, and Plaintiff has filed a reply brief. For the reasons set forth below, Plaintiff's Request for Review will be denied, and Judgment will be entered in Defendant's favor and against Plaintiff.

**I.     PROCEDURAL HISTORY**[2]

        On February 8, 2022, Plaintiff applied for disabled widow's benefits and SSI, alleging disability beginning July 2, 2021, R. at 250-51, 576-63, caused by throat cancer, depression, osteoporosis, trouble walking/balancing, and insomnia. R. at 316. The Social Security

---

[1] Martin O'Malley became Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted as Defendant in this suit. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.

[2] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

Administration ("SSA") initially denied Plaintiff's claim on June 9, 2022 and upon reconsideration on October 14, 2022, so she requested a hearing. *Id.* at 164-67, 177-79. On March 16, 2023, Plaintiff appeared telephonically, before Administrative Law Judge Sandra Morales Price ("the ALJ") for that administrative hearing. *Id.* at 12. Plaintiff, represented by an attorney, and vocational expert, Mary Beth Kopar ("the VE"), testified at the hearing. *Id.* at 12-39. On April 10, 2023, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued a favorable decision. *Id.* at 149. On September 28, 2023, the Appeals Council ("AC") reviewed and reversed the ALJ's decision; finding that Plaintiff had not been disabled since July 2, 2021.[4]

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant is impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimants residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

[4] In its decision, the AC adopted an identical RFC to the one determined by the ALJ. R. at 146. However, in its decision, the AC explained that the ALJ erred at Step 4 because she misclassified one of Plaintiff's previous jobs as a "personnel clerk" rather than as a "timekeeper," a job that required little to no reaching. *Id.* at 5. Further, the AC explained the evidence reflected that Plaintiff could do her past relevant work as an order department supervisor which required only occasional reaching overhead, consistent with the RFC finding. *Id.* Plaintiff does not dispute this finding here, nor did she dispute it when the AC alerted Plaintiff's counsel that it planned to revisit the ALJ's Step 4 finding and issue an unfavorable decision. *See id.* at 241-44, 375.

*Id.* at 7. The bases of the reversal were findings by the AC that: (1) the VE had mischaracterized Plaintiff's prior timekeeper position; and (2) Plaintiff's prior order department supervisor position required no more than occasional reaching. *Id.* at 5. The timekeeper[5] position required little to no reaching, and the order department supervisor[6] position required no reaching. *Id.* Since both positions required little to no overhead reaching, the AC determined that Plaintiff could perform both jobs, given her RFC. *Id.* After the AC's decision became the Commissioner's final decision, Plaintiff sought judicial review from this court on December 1, 2023, challenging the RFC's failure to include her use of an assistive ambulatory device. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II.  FACTUAL BACKGROUND

A.  <u>Plaintiff's Personal History</u>

Plaintiff, born on November 30, 1964, R. at 12, was 58 years old when the ALJ rendered her decision. R. at 149. She is divorced and lives with her boyfriend and adult daughter. *Id.* at 16. Plaintiff finished high school and earned an associate degree in computer programming. *Id.*

B.  <u>Plaintiff's Testimony</u>

At the March 16, 2023 hearing, Plaintiff testified regarding limitations that she alleges result from physical impairments and prevent full-time employment. She stated that, also, her depression has prevented her from working in the prior three years. R. at 17. Plaintiff is prescribed Effexor for her depression. *Id.* at 22. As for her physical impairments, Plaintiff stated that she has broken her left shoulder twice. *Id.* at 25. Thereafter, she has had limited mobility and more restricted driving ability. *Id.* She cannot lift her left hand very far over her head. *Id.* She also

---

[5] Timekeeper is a sedentary position, which requires little to no reaching. R. at 5.
[6] Order department supervisor is a sedentary position, which requires no reaching. *Id.*

broke her neck, pelvis, and wrist in two places, during a fall. *Id.* She requires the assistance of a cane to balance herself. *Id.* at 29.

Plaintiff has a current driver's license and drives to the grocery store twice weekly. *Id.* at 16. However, her impairments limit her ability to carry a basket full of laundry and to perform other household tasks, such as cooking, must be done in moderation. *Id.* at 26. Plaintiff stated that she cannot get out of bed by herself, partly because she cannot lift her left leg. *Id.* at 28. She can dress and shower herself. *Id.* at 31.

For the eight years prior to the hearing, Plaintiff had been doing sedentary and administrative work, which involved little to no lifting and carrying. *Id.* at 18. Plaintiff testified that she can only lift between ten to fifteen pounds for a short period. *Id.* at 29.

B.  Vocational Expert's Testimony

At the administrative hearing, the VE testified. She characterized Plaintiff's past positions as the equivalent of a (1) personnel clerk,[7] which is semi-skilled,[8] typically at a light[9] level of

---

[7] This is the position that the AC found that the ALJ misclassified and should have been classified as a "timekeeper," a position that that required little to no reaching. *Id.*

[8] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

exertion; and (2) order department supervisor, which is skilled,[10] typically at a sedentary[11] level of exertion. R. at 35.

The ALJ's first hypothetical scenario asked the VE to consider an individual of Plaintiff's age, education, and past work experience who could perform work at the light exertional level and who can "occasionally reach in any direction, including overhead, with the left upper extremity, never climb ladders, ropes or scaffolds, occasionally do the rest of the postural meaning crawling, stooping, kneeling, crouching, climbing ramps and stairs." *Id.* at 36. This individual should have only "occasional exposure to machinery, vibrations, and extreme cold." *Id.* The VE responded that, with these restrictions, none of Plaintiff's past work would be possible.[12] *Id.* at 37.

The ALJ's second hypothetical question asked whether the individual previously described could "transfer any skill to other jobs which use the same or similar tools, machines, raw materials, products, processes or services." *Id.* at 38. The VE replied that the described individual could not do so. *Id.*

### III. THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

1. It was previously found that [Plaintiff] is the unmarried widow of the deceased insured worker and has attained the age of 50. [Plaintiff] met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

---

[10] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[11] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[12] The AC disagreed with this opinion because the evidence actually supported Plaintiff's ability to do occasional reaching overhead; therefore, she could do her past work as an order department supervisor. *See supra* n.4.

2. The prescribed period ends on October 31, 2024.

3. [Plaintiff] has not engaged in substantial gainful activity since July 2, 2021, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

4. [Plaintiff] has the following severe impairments: residuals of neoplasm of the soft palate and tonsil, status-post resection; and residuals of a left shoulder injury (20 CFR 404.1520(c) and 416.920(c)).

5. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally reach in any direction, including overhead, with the left upper extremity. She can never climb ladders, ropes, or scaffolds and can occasionally do the remaining postural activities, such as crawling, stooping, kneeling, crouching, and climbing ramps/stairs. [Plaintiff] can have no exposure to heights and occasional exposure to machinery, vibrations, and extreme cold.

7. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. [Plaintiff] was an individual of advanced age on the established disability onset date (20 CFR 404.1563 and 416.963).

9. [Plaintiff] has at least a high school education (20 CFR 404.1568 and 416.968).

10. [Plaintiff]'s acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

11. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that

>   [Plaintiff] can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 12. [Plaintiff] has been under a disability as defined in the Social Security Act since July 2, 2021, the alleged onset date of disability (20 CFR 404.1520(g) and 416.920(g)).

R. at 145-46, 148.

## IV.  DISCUSSION

A.  <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if substantial evidence supports them.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Id.*  Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91.  Nor is the court permitted to "impose

7

[its] own factual determinations." *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.  Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C. <u>Review of the Administrative Law Judge's Decision</u>

Applying the sequential evaluation process, the ALJ concluded that Plaintiff could not perform any of her past relevant work. R. 148. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), she was disabled from July 2, 2021, through the date of her decision, April 10, 2023. *Id.* at 149. The AC reversed this conclusion, finding that Plaintiff could perform her past relevant work and, therefore, was not entitled to disability benefits. *Id.* at 7.

At the administrative hearing, Plaintiff stated that the symptoms of her physical impairments preclude her from performing her prior or any other type of work. *Id.* at 58. In her brief, Plaintiff argues that remand is warranted because the ALJ erred by improperly evaluating Dr. Ziba Monfared's opinion and, as a result, incorrectly excluded from the RFC assessment Dr. Monfared's finding that Plaintiff required an assistive ambulatory device in the workplace. Pl.'s Br. at 4-9. Plaintiff states that if the ALJ had properly evaluated Dr. Monfared's opinion, she "would have found Plaintiff required an assistive device for any potential work activity." *Id.* at 8. Defendant contends that the ALJ correctly applied the Commissioner's regulations and adequately explained the basis for her opinion. Def.'s Resp. at 7. This court finds that Plaintiff's request for review fails, because she has not alleged an actual harmful error. Even so, the ALJ correctly applied the applicable regulations in reviewing the opinion at issue.

1. <u>Plaintiff Has Not Alleged a Harmful Error Warranting Remand</u>

Plaintiff's allegation of error, that the ALJ failed to properly apply regulations related to her ostensible need for an assistive ambulatory device, and thereby producing an RFC that excluded the need for a cane, is unavailing. This is the case because, even if an ambulatory assistive device had been included in Plaintiff's RFC, she would not have been disqualified from

performing her prior relevant positions. Furthermore, she does not show that the ALJ erred in the overhead reaching component of her RFC. Even accepting Dr. Monfared's opinion, Plaintiff would have been found to be not disabled, because she was found by the AC to be able to do her sedentary job, which had little to no overhead lifting. She does not explain how the use of the cane would preclude her from performing any overhead lifting. Since Plaintiff does not state how a requirement for an assistive ambulatory device would have prevented her from performing sedentary positions that require little to no overhead reaching, the ALJ's alleged error here could not have affected the outcome of the case. *See Rutherford*, 399 F.3d at 553 (noting that remand is not required to correct errors that would not affect the outcome of the case). Even so, assuming *arguendo*, that acceptance of Dr. Monfared's opinion could have somehow affected Plaintiff's RFC, the ALJ properly evaluated the doctor's opinion for the following reasons.

2. The ALJ's Supportability and Consistency Analysis Were Adequately Reasoned

Plaintiff argues that the ALJ did not properly evaluate the opinion evidence Dr. Monfared provided. Pl.'s Br. at 4. Plaintiff specifically takes issue with the ALJ's application of the supportability and consistency factors. *Id.* at 6-7. Plaintiff appears to argue that had the ALJ properly addressed the supportability and consistency of Dr. Monfared's opinion about her need for an assistive ambulatory device, her RFC would have included a broader restriction regarding overhead reaching, thereby rendering her disabled. *Id.* at 4. This court finds that, in discounting the opinion, the ALJ adequately addressed the required supportability and consistency factors. Therefore, the lack of broader restrictions in Plaintiff's RFC cannot be ascribed to the basis upon which the ALJ rejected Dr. Monfared's opinion, which is that the opinion was unsupported and inconsistent with the medical record.

Plaintiff filed her application on February 8, 2022; hence, the new regulations for

evaluating medical opinion evidence apply. 20 C.F.R. §§ 404.1520c, 416.920c. When an ALJ considers medical opinions in the record, these new governing regulations indicate that supportability and consistency are the two most important factors.[13] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Indeed, those are the only two factors an ALJ must consider explicitly. *Id.* Supportability refers to the objective medical evidence and accompanying explanation the medical source provides to justify those medical opinions. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency refers to whether, and how consistent, the medical source's opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In addition, if a medical source provides multiple opinions, an ALJ is not required to provide an analysis of each opinion; instead, the ALJ may address how the relevant factors apply to each source's opinions collectively. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)

a. The ALJ Adequately Addressed Supportability

Plaintiff argues that the ALJ's supportability analysis was flawed because she mischaracterized his findings and ignored parts of Dr. Monfared's opinion that led to her finding the opinion unsupported. Pl.'s Br. at 7. This court finds that the ALJ committed neither error.

The ALJ sufficiently discussed the supportability of Dr. Monfared's opinion by properly adhering to the supportability standard. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (explaining that this standard looks to the medical evidence and supporting explanation(s) the medical source provides to support his opinions). In finding the April 2022 opinion unpersuasive, the ALJ explained that Dr. Monfared observed that Plaintiff "has severe balance difficulties; is limited in her ability to stand/walk; and use of a cane is medically necessary." R. at 147. To the

---

[13] These regulations identify five factors for evaluating medical opinions that the ALJ should consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5); § 416.920c(c)(1)-(5).

ALJ, this assessment was unsupported by the doctor's examination note contained in the same opinion that stated Plaintiff's "gait was normal both with and without a cane." *Id.* This court finds that the ALJ properly characterized the opinion. She also correctly discussed findings that both supported Plaintiff's contention that she required an assistive ambulatory device, and those that ran counter to her claim.[14] Since the ALJ's analysis explained how she considered the opinion's supportability, without mischaracterizing or ignoring parts of the opinion,[15] it is in accordance with the governing regulations.

### b. The ALJ Adequately Addressed Consistency

Plaintiff claims that the ALJ's consistency analysis is flawed because of its alleged brevity. Pl.'s Br. at 7. She states that the ALJ simply writing that the opinion was inconsistent after a "thorough review of the records" does not meet the applicable standard. *Id.* This court disagrees.

An ALJ's failure to explicitly consider either one of the two factors has been held to constitute reversible legal error. *Cota v. Kijakazi*, Civ. A. No. 21-672, 2022 U.S. Dist. LEXIS 153505, at *19-20 (M.D. Pa. Aug. 25, 2022). In addressing the consistency of Dr. Monfared's opinion, the ALJ actually states that "a thorough review of the remainder of the medical evidence did not yield reports of similar balance difficulties or the use of the cane." R. at 147. The ALJ was not required to use any "magic words" in her analysis, *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); she need only establish that her analysis adheres to the regulatory requirement to "explain how" consistency was considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[14] The ALJ cited Dr. Monfared's statement that Plaintiff has severe balance difficulties and that use of a cane is medically necessary, as well as his contradictory statement that Plaintiff's gait was normal, both with and without a cane. R. at 147. This court notes that Dr. Monfared did not prescribe a cane for Plaintiff's use, and that Plaintiff testified that she got the cane on her own. *Id.* at 29.

[15] Again, this court rejects Plaintiff's contention that the supportability analysis is flawed because the ALJ "cherry-picked" findings in Dr. Monfared's opinion. Pl.'s Br. at 6. Contrary to Plaintiff's assertion, the ALJ specifically discussed findings that favored Plaintiff as well as those that could be deemed adverse to Plaintiff's disability claim.

This court finds that the ALJ's statement, that she thoroughly reviewed the medical evidence, and did not find evidence that Plaintiff required an assistive ambulatory device, sufficiently explains how she considered the opinion's consistency.  Inasmuch as the ALJ did not find medical record evidence that was consistent with Dr. Monfared's opinion, it follows that she could not have provided any additional discussion on the matter.  Notably, Plaintiff acknowledges Defendant's argument that the medical record does not support her need for an assistive ambulatory device, but she does not rebut Defendant's assertion by citing any medical opinion evidence in the record that the ALJ overlooked to support her need for an assistive ambulatory device.  *See* Pl.'s Reply (citing Def.'s Resp. at 12).  This court, likewise, sees no such evidence and, hence, concludes that the ALJ adequately addressed the consistency of Dr. Monfared's opinion.

## V. CONCLUSION

Plaintiff's Request for Review is denied.  An implementing Order and Order of Judgment follow.